```
        UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF WEST VIRGINIA
                AT CHARLESTON
```

**MAEGAN E. EPLIN,**

      **Plaintiff,**

**v.**                        **CIVIL ACTION NO: 2:21-CV-00257**

**KILOLO KIJAKAZI,**
**Acting Commissioner of**
**Social Security,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

On April 20, 2021, plaintiff Maegan E. Eplin ("Eplin") instituted this action seeking judicial review of the Acting Commissioner's final decision pursuant to 42 U.S.C. § 405(g). The sole issue before the court is whether the decision denying Gibson's claim for disability insurance benefits under Title II of the Social Security Act ("the Act") is supported by substantial evidence. See 42 U.S.C. § 405(g).

### I. Background

The procedural history of plaintiff Eplin's claim for benefits under Title II of the Act is set forth in depth in the Proposed Findings and Recommendation ("PF&R") written by United

States Magistrate Judge Omar J. Aboulhosn.  See PF&R, ECF No. 12.  The court provides a brief restatement of those facts here.

Eplin first filed an application for benefits on October 20, 2015, which alleged she had been disabled since July 6, 2015, due to cardiomyopathy; bigeminy, trigeminy, quadrigeminy; a 35% ejection fraction; three unsuccessful ablations; fibromyalgia; interstitial cystitis; endometriosis; Chiari malformation; trigeminal neuralgia; anxiety; depression; irritable bowel syndrome; and a tear and bulging at L4.  Tr. 192-94, 214-59.  Her claim was denied on April 14, 2016, and then denied again on September 16, 2016, upon Eplin's request for reconsideration.  Tr. 101-05, 109-16.

Eplin requested a hearing before an Administrative Law Judge ("ALJ"), and her claim was heard by the Honorable Francine A. Serafin.  Judge Serafin issued a decision finding that Eplin was not disabled on August 23, 2018.  Tr. 15-34.  The Appeals Council denied Eplin's Request for Review of the ALJ's decision on October 23, 2018.  Tr. 3-6.

Eplin appealed that decision to this court on August 16, 2019, and on March 4, 2020, the court remanded the action to the Commissioner for further proceedings.  Tr. 1852-61. Thereafter, on May 4, 2020, the Appeals Council remanded the case to the ALJ with instructions to, inter alia,

> Give further consideration to the claimant's trigeminal neuralgia, occipital neuralgia, irritable bowel syndrome, and interstitial cystitis, and evaluate whether they are severe, medically determinable impairments (20 CFR 404.1520(c)).

> [and]
>
> Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and Social Security Ruling 96-8p).

Tr. 1864-66.

Eplin's second hearing was held on September 29, 2020, and the ALJ's second unfavorable decision was issued on December 21, 2020.  Tr. 1715-1812.

Eplin then filed this action before the court.  ECF No. 1.  By standing order, this action was referred to United States Magistrate Judge Aboulhosn.  On November 2, 2021, his PF&R was filed.  PF&R, ECF No. 12.  Therein Magistrate Judge Aboulhosn thoroughly detailed Eplin's medical records related to trigeminal neuralgia and occipital neuralgia, as well as the medical records related to her irritable bowel syndrome and interstitial cystitis.  PF&R, ECF No. 12 at 8-12.

Of particular importance, the magistrate judge noted that the ALJ considered Eplin's complaints of migraines,

> noting that treatment notes from April 2016 documented her complaints of headaches once or twice a week associated with facial pain, however, Claimant denied nausea, vomiting, blurred and double vision. (Tr. at 1730, 4734-4735)  Though Claimant testified her migraines caused blurred and double vision and

> vomiting, and described them as "debilitating", the ALJ noted the records showed occipital headaches and migraines were "relatively stable." (Tr. at 1730, 4640–4651)
>
> Continuing her review of the medical records regarding Claimant's complaints of facial pain, the ALJ also noted that otolaryngology notes from April 2017 documented myofascial pain in the temporomandibular joint, greater on the left, causing otalgia. (Tr. at 1730, 2054-2057) The ALJ noted that the provider was able to view a 2015 brain MRI, but could not clearly identify the area on the left cranial nerve VII and VIII complex "that had been mentioned as hyperintense in the past." (Id.) However, the ALJ noted that treatment records from November 2017 indicated that Claimant's facial pain was relatively improved with Trileptal therapy. (Tr. at 1730, 1654-1665) The ALJ also discussed additional treatment records: that Claimant's right frontal region was "nontender" (Tr. at 1730-1731, 1510-1522); that a progress note from October 2018 indicated the frequency of Claimant's migraines were two per month, and she reported her facial pain lasted two to three seconds (Tr. at 1731, 4640); and that a March 2020 note showed Claimant's right facial pain was relatively improved and there was a reduction in the frequency of her migraines – only six to eight in a five month period from November 2019 through March 2020. (Tr. at 1730- 1731, 4640-4651) The ALJ then found that "[i]n light of the subjective statements and objective findings regarding the frequency of the claimant's migraines and two to three second duration of the facial pain related to trigeminal neuralgia", the ALJ determined Claimant would be off task 10% of the workday, and included environmental limitations as to reduce "possible triggers of trigeminal neuralgia." (Tr. at 1731)

PF&R 18–20.

Based on the foregoing, Magistrate Judge Aboulhosn found that "at least one finding" made by the ALJ with respect

4

to the March 2020 treatment note was erroneous and that the same finding was relied upon by the ALJ to conclude that Eplin would be off task for 10% of the work day.  Id. at 20.

       Indeed, the ALJ found:

> A treatment note from March 2020 continued to show the claimant's right facial pain was relatively improved.  The note indicated a reduced frequency of migraines.  While earlier notes mentioned one two [sic] per week, the March 2020 note documented only six to eight migraines since November 2019, a five month period.

Tr. at 1731.

       As noted above, the ALJ went on to state,

> In light of the subjective statements and objective findings regarding the frequency of the claimant's migraines and two to three second duration of the facial pain related to trigeminal neuralgia, the undersigned finds the claimant will be off task ten percent of the work day.

Id.

       Magistrate Judge Aboulhosn found, however, that the medical note from what was March 9, 2020, did not indicate a "reduced frequency of migraines."  PF&R at 20 (quoting Tr. 1731).  Instead, the note stated "migraine frequency has _increased_ 6 to 8 migraine headaches since the last appointment 11/19/2019." Id. at 20 (quoting Tr. 4645 with emphasis added).

5

The magistrate judge concluded the treatment records indicated "that the frequency of Claimant's migraines had, in fact, not subsided as the ALJ found," but instead when physician's notes were read in context, they "appear[ed] to indicate that Claimant had been reporting the frequency of her headaches/migraines on a monthly basis, not that she only experienced six to eight migraines from November 2019 through March 2020."  Id. at 20-21.  The magistrate judge accordingly found that insofar as the ALJ's finding regarding the frequency of Eplin's migraines was erroneous, the ALJ's finding that Eplin would be off task 10% of the workday was similarly in error. Id. at 21.

The magistrate judge further considered whether the ALJ's decision with regard to the claimant's interstitial cystitis (IC) and irritable bowel syndrome (IBS) was supported by substantial evidence.  PF&R at 21-24.  By a footnote citation to the deferential standard of review for the Commissioner's factual findings in Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019), the magistrate judge appears to have found the ALJ's decisions on these matters supported by substantial evidence. PF&R at 24, n.17.

Finally, on account of his finding that the ALJ erred with respect to evidence of the claimant's migraines and their

6

frequency, Magistrate Judge Aboulhosn found it "difficult . . . to determine whether the overall RFC is supported by substantial evidence, as the combined effects from all [of the claimant's] impairments is undetermined." PF&R at 24. He further found that the claimant's continued endorsement of unpredictable and frequent bathroom breaks also demanded further consideration by the ALJ as to whether the 10% off task limitation was underrated on account of the indeterminate overall combined effects of the impairments on the RFC assessment. Id. at 24-25.

The magistrate judge recommended that the undersigned judge grant Eplin's request for remand, deny the defendant's request to affirm the decision of the Commissioner, reverse the final decision of the Commissioner, and remand this action to the Acting Commissioner. Id. at 1, 26–27.

On November 4, 2021, the Acting Commissioner filed her objection to the PF&R. Obj., ECF No. 13. The Acting Commissioner "submits that the PF&R did not afford the decision of the administrative law judge ("ALJ") the required deference under the substantial evidence standard of review." Id. at 1. Eplin did not respond to the Acting Commissioner's objection.

## II. Legal Standard

The court reviews de novo those portions of the magistrate judge's PF&R to which objections are timely filed. 28 U.S.C. § 636(b)(1)(B); see Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).

"Under the Social Security Act, [a reviewing court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)).

"Substantial evidence" is defined as "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401 (1971), but can be "less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). Substantial evidence may support the ALJ's decision even "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). The "substantial evidence" standard of review is a deferential one, see Blalock v. Richardson, 483 F.2d 773, 775-76 (4th Cir. 1972), and the Commissioner, not the court, is charged with resolving any conflicts in the evidence, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

### III. Discussion

The Social Security Administration has established a "sequential evaluation process" for determining whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). Applicable here, the third step requires the ALJ to determine the severity of the claimant's impairments. 20 C.F.R. §§ 404.1520(a)(4)(iii). If the claimant has an impairment or impairments that meet the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1 and meets the specified duration requirement, the claimant is disabled. Id. At the fourth step, the ALJ is to consider the claimant's residual functional capacity ("RFC") and her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv). If the claimant is still able to do past relevant work, she will not be considered disabled under the Act. Id.

In this case, at step three, the ALJ found "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." Tr. 1724.

> The ALJ then concluded that
>
> the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except this individual can occasionally climb ramps and stairs, but can

>never climb ladders, ropes or scaffolds. She can occasionally balance, stoop, kneel, and crouch, but never crawl. She must avoid frequent exposure to extreme cold, wetness, and vibrations. This individual must avoid work place hazards such as moving machinery and unprotected heights. She will be off task 10% of a workday due to a need for additional breaks beyond those provided by an employer. No work environment that has a noise level above moderate as that term is used in the Selected Characteristics of Occupations.

Tr. 1726.

The ALJ then made a finding, pursuant to step four, that "[t]he claimant is capable of performing past relevant work as an accounts payable clerk, medical secretary, and oil and gas secretary. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565)." Tr. 1732. Accordingly, the ALJ found that Eplin "has not been under a disability, as defined in the Social Security Act, from July 6, 2015 through the date of [the ALJ's January 14, 2021] decision (20 CFR 404.1520(f))." Id. at 1733.

The magistrate judge's analysis of the available evidence is thorough and establishes that the ALJ made an error when assessing Eplin's RFC. See PF&R 14-26. Through some combination of clerical error on the part of one of Ms. Eplin's treating physicians and author error on the part of the ALJ, the RFC determination was based upon an inaccurate statement of the severity and frequency of the claimant's migraines. The

claimant's physician in question, Dr. Kris Murthy, appears to have regularly marked the claimant's reported pain assessment as a "1" while her narrative treatment notes indicate that the claimant's reported pain assessments were regularly between six and seven on a scale of one to ten.  See id. at 21, n.14. Additionally, the court accepts and expands upon the magistrate judge's sound analysis of the basis for the ALJ's error in interpreting the treatment notes, and concurs with his conclusion that the ALJ erroneously viewed a treatment note from March 9, 2020 as indicating the total frequency of migraines over a five-month period when, viewed in context, it indicated the claimant's frequency of migraines in a single month.  See PF&R 19-21 (discussing treatment note at Tr. 4645).

The pertinent treatment notes by Dr. Murthy are expressed by her in cryptic form as follows:

- October 22, 2018: "2 migraine month described since last appointment".  Tr. 4640.

- August 12, 2019: "3 migraine month reported".  Tr. 4642.

- March 9, 2020: "migraine frequency has increased 6 to 8 migraine headaches since the last appointment 11/21/2019".  Tr. 4645.

- June 2, 2020: "4 to 8 migraine headaches a month reported".  Tr. 4648.

Turning to the March 9, 2020 note, it is stated to be an increase from November 21, 2019 over that which is a 3⅔-month period to March 9, 2020. Although the November 21, 2019 evaluation is not before the court, and apparently not before the ALJ, a fair reading of the March 9th note is, as the magistrate judge concluded, a reference to 6 to 8 migraines per month.

The ALJ's finding of only 6 to 8 migraines being reported for a period of five months is plainly unwarranted and clearly erroneous for multiple reasons. First, the "6 to 8" reference is an <u>increase</u>, meaning an increase over preceding estimates. Second, the period of time extends not for five months but for what is 3⅔ months from November 21, 2019 to March 9, 2020. Third, the June 2, 2020 report that came less than three months later is 4 to 8 migraines per month. Fourth, an increase in migraine frequency is consistent with notes from an emergency room admission on February 14, 2020 reading: "Patient states: have fought a headache for the past 3 or 4 months" and identifying the pain as an 8 out of 10. Tr. 4597. When the "6 to 8 increased" is read in context with the immediately preceding (3 per month) and immediately succeeding treatment note (4 to 8 per month), as well as the hospital admission note, it is clear enough that the 6 to 8 increase refers to 6 to 8

12

migraines per month.[1]

The misinterpretation of the "6 to 8 increased" note and the ALJ's reliance on it led to the ALJ's finding that Eplin would be "off task ten percent of the work day." If the ALJ had instead applied a range of 6 to 8 or up to 8 migraines per month, the off-task time would have exceeded twice that which the ALJ accepted and applied,[2] as reflected in the Vocational Expert's opinion expressed in the following exchange between the ALJ and the Vocational Expert:

---

[1] While 6 to 8 migraines per month represents an increase of migraine frequency over that reported in the October 22, 2018 and August 12, 2019 treatment notes, it would be largely consistent with the frequency of migraines reported by the claimant in prior treatment notes. On January 6, 2016, Eplin reported two migraines per week. Tr. 2307. On April 19, 2016, Eplin reported experiencing two per week, having recently had a headache lasting 8 straight days. Tr. 2295. On April 20, 2016, she reported experiencing 1 to 2 per week. Tr. 4735. On April 20, 2018, she reported experiencing 2 to 3 headaches per week. Tr. 3640. And on May 17, 2018, she reported experiencing 1 to 2 per week. Tr. 3637.
    On two other occasions, Eplin reported outlier frequencies of migraines. On June 11, 2015, she reported only 2 to 3 per month. Tr. 3529. And on March 5, 2018, she reported experiencing headaches daily or every other day. Tr. 2233.

[2] The record includes one possible reference to the typical duration of the claimant's migraines in a treatment note from Dr. Alastair Hoyt on April 16, 2018. Tr. 4736. There, Dr. Hoyt refers to "occipital headaches" that are reported to last "about 60% of the day." Id. It is unclear to the court whether this is a reference to the claimant's occipital neuralgia or the claimant's migraines with aura. In any case, the ALJ made no finding about the typical duration of claimant's migraines that would explain their effect on the amount of time the claimant would be off task at work.

> Q I'd like to ask you also about off task time and an employer's tolerance for off task time. What is the – in your opinion. The limit, in terms of off – off task time – off task time before it begins to affect job retention?
>
> A What I typically say, your honor, is that if a person is off-task 15 percent or more of a workday, then the sustainability of any job would be in question. So – but – around 10 percent or a little bit more off task, in my opinion, would be acceptable.
>
> Q Okay.  And in terms of absences, if you had an individual who would be absent two or more days a month, off of work, and that could be either partial days or full days combined would amount to two or more a month, would there be any jobs for such a hypothetical individual?
>
> A No, your honor.

Tr. 1809.

In view of the foregoing, the court must decide whether the ALJ's reliance on an error of fact in determining the claimant's RFC precludes a finding that the ALJ's decision is supported by substantial evidence. "Where an insufficient record precludes a determination that substantial evidence supported the ALJ's denial of benefits, [a federal] court may not affirm [the ALJ's decision] for harmless error." Patterson v. Comm'r, 846 F.3d 656, 658 (4th Cir. 2017). A record is insufficient where no fact finder has assessed the probative value of competing evidence on the record, Meyer v. Astrue, 662 F.3d 700, 707 (4th Cir. 2011), unless the evidence in the case

as a whole is "so one-sided as to require the conclusion" that the ALJ's denial of benefits was supported by substantial evidence. Wiebusch v. Comm'r, 2022 U.S. App. LEXIS 20732, at *13 (4th Cir. 2022). Remand is appropriate where an ALJ's alleged author "errors are not ones that would be unlikely to affect the outcome." See Brinkley v. Astrue, 695 F. Supp. 2d 269, 282 (D.S.C. 2010) (discussing Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004)).

      Here, the erroneous interpretation of the frequency of the claimant's migraines is such that the ALJ has not yet meaningfully assessed the probative value of the evidence of claimant's treatment notes regarding her migraine frequency and severity. This factual error formed a substantial part of the express basis for the ALJ's determination of the claimant's RFC with respect to her migraines, and as such it appears to have influenced the ALJ's overall RFC determination to an undetermined degree. Because a corrected finding on this point could significantly impact the RFC off-task limitation, this factual error is not unlikely to affect the outcome of the ALJ's decision. The court is unable to find that the Commissioner's denial of benefits is supported by substantial evidence, and remand is therefore appropriate.

      Finally, inasmuch as the only objection made by the Commissioner to the PF&R relates to the magistrate judge's findings that the ALJ's decision was not supported by

substantial evidence, the court need not review the magistrate judge's determination that the ALJ's findings on the claimant's IC and IBS were supported by substantial evidence. See PF&R 24. However, because of an apparent clerical error relegating this conclusion to a hanging footnote, see id. n.17, the court has reviewed the record and concurs with the magistrate judge's conclusion. The court finds that the PF&R correctly assesses that the ALJ's discussion of her findings on Eplin's IC and IBS with corroborating citations to the record is sufficient to satisfy the substantial evidence standard, even in light of claimant's record citations to the contrary.

Substantial evidence requires only such "evidence which a reasoning mind would accept as sufficient to support a particular conclusion," Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966), and "it is the responsibility of the Secretary and not the courts to reconcile inconsistencies in the medical evidence." Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976). Here, the ALJ has reconciled competing evidence in the medical record as to the severity of the claimant's IC and IBS and sufficiently explained her reasoning in her decision of December 21, 2020. See Tr. 1725, 1728, 1731. Remand on the issue of the claimant's IC and IBS is not warranted.[3]

---

[3] The magistrate judge's PF&R includes the following conclusion: "Given that Claimant still endorses unpredictable and frequent bathroom breaks, this too, demands further consideration by the ALJ as to whether Claimant requires additional time being off task . . ." PF&R at 24. In adopting the magistrate judge's

Accordingly, the court remands this matter to the ALJ for further consideration of the claimant's migraine headaches and their effect on the claimant's overall RFC, in conjunction with the claimant's other impairments.

## IV. Conclusion

For the reasons stated, and having reviewed the record de novo, the court ORDERS as follows:

1. The PF&R be, and it hereby is, adopted and incorporated herein, together with the court's additional analysis herein;
2. Plaintiff's request for remand be, and it hereby is, granted;
3. The final decision of the Commissioner be, and it hereby is, reversed and this action is remanded to the Commissioner for further proceedings pursuant to 42 U.S.C. § 405(g), fourth sentence; and
4. This case be dismissed from the court's docket.

---

conclusion on this point, the court endorses it to mean simply that on remand the Commissioner must consider claimant's RFC overall, taking into account the effects of both her migraines and her other continuing impairments.

**The Clerk is directed to forward copies of this written opinion and order to all counsel of record and the United States Magistrate Judge.**

ENTER: October 11, 2022

_____
John T. Copenhaver, Jr.
Senior United States District Judge